Mr. Justice Scott delivered the opinion of the Court. The aid we have received from the great research and lucid ai’guments of the counsel on both sides in this case, has not only enabled us to arrive at a conclusion satisfactory to our own minds, but also to present our views in a comparatively narrow compass. The new promise, upon which alone this action is grounded, being conditional, the plaintiff had to prove it as laid in his declaration, and also its acceptance by himself and the ability of the defendant to pay at the time when the suit was brought. There can be no question but that this, like other contracts, to be valid, must have the concurrent assent of each of the parties to the several stipulations. All the authorities state a contract (or agreement, which is the same thing) to be aggregatio menlium. An acceptance is as much the distinct act of one party to the contract as the offer is of the other. None of the authorities cited by either side contradict any of these propositions. But the acceptance need not be express, as when declared by some sign, as by speech, writing, gesture, or other action; but it may be as well given tacitly, to be inferred from silence or inaction, or forbearance of action. So, a refusal to accept- may be, in like manner, indicated as well by action as forbearance of action, according to the circumstances of each particular case. Take, for illustration, the cases of Craig vs. Brown, (3 Wash. C. C. Rep. 505,) Lousdale vs. Brown, (4 ib. 89,) in both of which the principle of acceptance is distinctly recognized. In the first, where it was proven that the defendant said to the witness “ he would pay the bill of exchange, if he ever got able.” The case turned, for the most part, upon the fact that the new promise was not made to the plaintiff, or to “ any person authorized by him to assent to it, or, in any respect, to bind him.” And, to show that the plaintiff never ratified this, and thus, by means of a subsequent recognition of the witness as his agent in the premises, accepted the promise, the learned Judge alluded to the fact that the plaintiff had, two years before the proof, showed that the defendant was able to pay, instituted a suit on the original bill of exchange as “ record evidence of his dissent,” which he held as sufficient to rebut effectually any presumption of assent by recognition that might have been inferable from the silence of the plaintiff and forbearance to sue from the year 1809, when the promise was made to the witness, till the year 1813, when the first suit was instituted; and goes on to remark that having thus shown his dissent, “he cazmot now be permitted to avail himself of a promise to which he has once refused his assent, because it will now serve his purpose,” the defendant having at length become able to pay. In this case, then, the conduct of the plaintiff in bringing a suit upon the original cause of action two years before the defendant was proven to have been able to pay, was the ground of the conclusion of his dissent: while, in the other case, (that of Lousdale vs. Brown,) where the new promise was made to the plaintiff in person “ to pay when he was able, if the plaintiff would indulge him,” and the plaintiff remained “ silent,” but, from that time forward, “ did actually indulge the defendant for seven years, and until his remedy on the bill was completely barred by the statute of limitations,” the silence of the plaintiff, followed up by this conduct, whereby he lost his remedy, was held “equivalent to an express assent.” And this, although at the end of the first seven years the plaintiff did bring a suit'6n the bill of exchange in which he was defeated : the Court holding that the institution of this suit, although before the defendant was proven actually able, was not sufficient to repel the presumption of tacit assent at the time that the promise was made, which had been shown by silence at the time, followed up for seven years by forbearance, the consequence of which forbearance the perfection of the bar of the statute of limitations resulted. Both of these cases, then, show that where the acceptance or dissent is not expressly proven by overt acts, it is to be gathered from the particular circumstances of each case, and, consequently, that an isolated fact or circumstance, such as the subsequent bringing of a suit upon the contract, which, in its nature, cannot, in itself, prove either assent or dissent, unless presented as a test by the express terms of a proposition, might equally tend to prove one or the other under different circumstances. The mere determination of the mind, unacted on, can never be an acceptance while any thing that shall amount to a manifestation of a formed determination to accept, communicated or put in a way to be communicated to the party making the offer, would doubtless complete the contract provided the offer be then standing. (Mactier vs. Forth, 6 Wen. 119.) Nevertheless, until the terms of the agreement had received the assent of both parties, the negotiation is open and imposes no obligation on either, (Gleason vs. Hawkins, 4 Wheaton 228;) after acceptance, however, it is equally binding on both. We think the case at bar may be determined by an examina;tion of the evidence in connexion with one of the instructions given by the Court below to the jury, viz : “ That bringing suit Upon the alleged promise the next day after it was made, is evidence that he did accept the promise of the defendant.” To determine whether or not this instruction was warranted by the testimony in the casé, we must necessarily look into the whole proof touching this point, to see'if a mere subsequent act on the part of the plaintiff,whereby he would seem to have made most important evidence for himself, by the doing of something which ordinarily is not done to produce evidence, but to enforce a right, was, by its necessary or even natural connex-ion with other facts and circumstances in proof, of such commanding import that it was a test of the acceptance of the conditional promise declared upon. The testimony, in substance, is, that Cravens took with him the witness to see Samuel, and, in the presence of the witness, asked Samuel for the money which he owed him, to which Samuel answered that he had not the means then, but would pay as soon as he could, that it was a just debt; that he had nothing of his own at all, but was doing business as agent for other men; that he had given up all his property when he took the benefit of the bankrupt lawthat Cravens asked Samuel to give him his note, which Samuel refused to do, saying’ “ he did not think that would be doing his creditors justice”: that witness then, in the presence of Cravens, asked Samuel if he would not give his note, if Cravens would give him time, to which he replied “ he could not give his note ”: that Cravens then left Samuel, somewhat excited: that witness also asked Samuel if he would not let Cravens have the amount in groceries, to which he replied he had not any groceries, and would as soon pay cash. And the next day, after this interview, this action was commenced. Now, from this testimony, what was the proposition of Samuel? Can it be said that it was equivalent to this: The debt is just; I now here pr.omise to pay it if my ability to pay can be established — prove my ability, and fix my liability if you can. If it was, the bringing of the suit the next day was a pregnant circumstance, showing, by the conduct of the plaintiff, his acceptance of this proposition, and one that would be entitled to much notice in the absence of all other opposing facts and circumstances ; but if there were opposing circumstances, it would be entitled to such weight only as it might seem to deserve in connexion with such opposing circumstances. It would seem that the jury must have considered the proposition of Samuel equivalent to that we have supposititiously stated, or they could not have rendered their verdict, and we are considering the weight of the testimony, not by way of impeaching their verdict under the instructions given, but to ascertain whether the instruction under consideration was properly given. Now, so far from showing such a proposition by Samuel as that supposed, we think it clear, from the testimony, that the proposition really made looked exclusively to the future and did ¡not contemplate the present at all. What he did promise is not •to be inferred alone from his promise, in terms, to “ pay whenever he could,” which would have been the case had that promise, in those terms, been put in writing, at the end of their colloquy, and thus cut off every thing else that was said at that time under the rules of evidence relating to written contracts. But the nature and extent of the promise, as it was not put in writing, must be gathered from all that was said at the time. Now, how are his protestations of total want of means, his refusal to pay money or groceries, his refusal to give his note even payable at some definite future time, and his allusions to his duties to those who had credited him since his bankruptcy, to be reconciled with a proposition for instantaneous legal liability, to be solvable forthwith? On the contrary, all these matters are fully reconcilable with an instantaneous legal obligation to be solvable upon the happening of a future contingency; and, therefore, the proposition seems neverthei’less to have included in its terms indefinite indulgence by Cravens, (a counter proposition for definite indulgence having been rejected,) referable, however, to a certain standard for its termination, that is to say, to a future ability to pay after some reasonable time had elapsed for discharging duties to those who had credited him since his bankruptcy. In this view of what was, we think, the actual proposition of Samuel, the instruction in question was altogether erroneous, for, so far from the institution of the suit, the next day, being evidence of the acceptance of the proposition of Samuel by Cravens, it was the very reverse as showing a conduct on his part totally at variance with an acceptance of the proposition. But, even if the proposition of Samuel be taken to be that which we have stated supposititiously, the instruction in question would be, in its terms, too broad, when all the testimony bearing upon the question of acceptance is considered: for clearly the circumstance that successive counter propositions were made, such as, for a note generally, for a note by giving time, to take the pay in groceries, the abrupt leaving of Samuel by Cravens, in a state of excitement, and the institution of the suit upon the original demand without any count upon the new promise, were all circumstances tending to negative that the acceptance by Cravens of the proposition as supposed, and these circumstances all being in proof the testimony did not warrant the Court in giving an instruction as to the institution of the suit beyond this, that is to say, that, in view of all the testimony in the case, the fact of the institution of the suit, although it could not of itself prove the acceptance, nevertheless it was a circumstance to be considered by the jury, but only in connexion with the other facts and circumstances in proof on this point, and that, from a consideration of all these together, they must determine whether or not the promise was accepted. It is true that these several facts touching the question of acceptance, were susceptible of various explanations, as that of of bringing the suit upon the original demand without a count in the first instance on the new promise, might be explained by a supposed opinion of the counsel for. the plaintiff when the suit was instituted that a new conditional promise might be given in evidence on a declaration on the old absolute promise, and that the amended declaration incorporating a count on the new promise might have been the result of subsequent doubts as to this. Still, it was a circumstance that should have been considered by the jury in determining this question of acceptance in connexion with the other circumstances; and so of the other circumstances in proof. Therefore, in any view we take of this case, the instruction we have been considering was clearly erroneous, and, for the reason that it was calculated to mislead the jury, the new trial ought to have been granted. Note — This case was submitted at the July term, 1847, and continued under, submission until the present term, when, it being suggested that Samuel, the plaintiff in error, had departed this-life, it was ordered that the judgment relate back to the July term, 1848, a period prior, to the death, of Samuel, and.subsequent, to the day of suh-mission. Reporter. The Court also erred in refusing to give the seventh instruction asked by the defendant, because the proposition made was not, in its terms, a standing proposition, and could have been made obligatory upon Samuel only by its acceptance by Cravens at the time of its being made, under the evidence in the case. And it was also error to permit the deposition of Lewis to be ■ read to the jury, under the rule laid down in Reardon vs. Farrington, (2 Eng. 366,) and Harris vs. Hill & Relf, (ib. 455;) nor was the objection as to this obviated by the fact that this deposition related to the two counts only which were non grossed, because this deposition also bolstered up the credibility of the main witness, Crabtree, whose credibillity seems, from the charge of the Judge, to have been assailed for supposed “prevarication,” and therefore may have had an important bearing on the verdict of the jury. But this error seems unimportant, as it was not made one of the grounds for the motion for a new trial, or incorporated in the bill of exceptions to the opinion of the Court overruling that motion. There seems no other error in this record, and for the two errors first pointed out, let the judgment be reversed, and the cause remanded to be proceeded in, and the judgment in this case entered nunc pro tunc as of July term, 1848.